IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EUGENE CRAWFORD,          *
                         *
     Plaintiff,          *
                         *
vs.                      *     CIVIL ACTION 08-00714-KD-B
                         *
MICHAEL J. ASTRUE,       *
Commissioner of          *
Social Security,         *
                         *
     Defendant.          *

REPORT AND RECOMMENDATION

Plaintiff Eugene Crawford ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits, disabled widowers benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was held on October 14, 2009. Upon consideration of the administrative record, oral arguments and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

I.   Procedural History

Plaintiff filed applications for disability insurance benefits, disabled widowers benefits, and supplemental security income on March 15, 2001. He alleged a disability onset date of

October 9, 2000.  Following the initial denial of Plaintiff's application, and an administrative hearing, Administrative Law Judge (hereinafter "ALJ") Frank M. DeBellis issued a decision on September 17, 2002, finding that Plaintiff was not disabled. (Tr. 264-273[1].

Plaintiff filed new applications on March 21, 2003. (Tr. 369-371, 800-803, 805-806).  In the new applications, Plaintiff alleged that he has been disabled since September 18, 2002 due to numbness and limpness on the left side resulting from a heart attack and stroke, very high blood pressure, and a bad heart.  (Tr. 398, 412, 421).  Plaintiff's applications were denied initially, and he timely filed a Request for Hearing before an Administrative Law Judge.  (Tr. 277-278, 293-295, 300, 807-809).  On April 28, 2005, ALJ David Murchison (hereinafter "ALJ Murchison") held an administrative hearing which was attended by Plaintiff, his representative and a vocational expert (hereinafter "VE").  (Tr. 857-869).  On October 24, 2005, ALJ Murchison issued an unfavorable decision wherein he concluded that Plaintiff was not disabled. (Tr. 279-292).  On January 5, 2007, the Appeals Council ("AC") remanded the case with specific instructions to the ALJ. (Tr. 360-362)  ALJ Murchison conducted a second administrative hearing on April 26, 2007.  Plaintiff, his representative and a VE were in attendance.

---

[1]There is nothing in the record which indicates that the September 17, 2002 ALJ decision was appealed to the Appeals Council.

(Tr. 83-94). On May 25, 2007, ALJ Murchison issued a second unfavorable decision wherein he again concluded that Plaintiff was not disabled. (Tr. 21-35). The AC denied Plaintiff's request for review of this decision, and the ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981. (Tr. 12-15). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

A.   Whether the ALJ erred in failing to adopt the prior ALJ's finding that Plaintiff required a sit/stand option.

B.   Whether the ALJ improperly formed his own opinion about Plaintiff's need for a sit/stand option, and erred in finding that Plaintiff can perform his past relevant work as an "Instructor, Physical Education" under Dictionary of Occupational Titles (DOT) # 099.224-010.

## III. Factual Background

Plaintiff was born on April 3, 1951, and was 54 years old at the time of the April 2005 administrative hearing. (Tr. 277, 369, 800, 865). Plaintiff has a high school education, with one year of college. (Tr. 418, 480). Plaintiff has past work experience as a ship fitter, security guard, custodian, and physical education director. (Tr. 93, 448, 461-467, 497, 861-865). At the April 2005 hearing, the VE testified that Plaintiff's past work as a custodian is medium unskilled, his past work as an activity director is light and semi-skilled and his work as a ship fitter is heavy and skilled. (Tr. 862).

3

Plaintiff testified at the April 2005 hearing that his worst problems are his glands and his heart. He also testified that his blood pressure shoots up whenever he is active, and that he experiences pain and stiffness in his legs and arms whenever he tries to work. (Tr. 862). At the April 2007 hearing, Plaintiff complained of stiffness on his right side, his shoulders and his legs, and of pain in his neck and back. According to Plaintiff, both the stiffness and the pain have gotten worse since the last hearing. (Tr. 86-88). Plaintiff also testified that he cannot sit too long without changing positions, and that he tosses and turns all night to find a comfortable position for sleep. He further testified that he can stand for about two hours, and that after about two or three hours, he requires a nap. (Tr. 88-89).

## IV. **Analysis**

### A. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[2] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792

---

[2]This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. June 14, 1999).

**B.   <u>Discussion</u>**

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§

5

404.1520, 416.920.[3]

In the case sub judice, the ALJ determined that while Plaintiff has the severe impairments of hypertension, cervical disc disease, lumbar disc and joint disease, aortic stenosis, left ventribular hypertrophy and asbestosis, they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Tr. 394, 399). (Tr. 27, 31). The ALJ also determined that Plaintiff retains the residual functional capacity ("RFC") to perform work at the light exertional

---

[3]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

level, that is, to sit for a total of 8 hours, stand for a total of 6 hours, and walk for a total of 4 hours in an eight-hour workday. He found that Plaintiff could lift/carry 21-30 pounds, frequently reach, occasionally bend, squat, crawl and climb, and use his extremities for repetitive action. He further found that Plaintiff should avoid more than occasional exposure to dust, fumes, gases and temperature extremes. (Tr. 31). The ALJ concluded that Plaintiff is capable of performing his past relevant work as a physical education instructor. (Tr. 34).

The relevant evidence of record[4] reflects that Plaintiff was treated by Cecil L. Parker, Jr., M.D., on September 3, 2002. Plaintiff was diagnosed with valvular heart, sleep apnea, weight loss and cervical musculoskeletal muscle spasm. (Tr. 558).

Plaintiff presented to Singing River Hospital emergency room on February 10, 2003, complaining of left-sided weakness and numbness in his face and arm. (Tr. 572). A CT of his head was normal, and a chest x-ray showed no evidence of acute pulmonary disease. (Tr. 587-588). An MRI showed chronic microvascular ischemic changes, but no evidence of an acute process, a bilateral duplex carotid sonography was normal, an EEG showed generalized slowing of cerebral rhythms, without any paroxysmal activity, and

---

[4]While the undersigned has examined all of the medical evidence contained in the record, including that which was generated before Plaintiff's alleged onset date, only that evidence which is relevant to the issues before the Court is included in the summary.

an echocardiogram showed sinus rhythm with nonspecific ST abnormalities (Tr. 577, 585, 589, 590-591). On discharge, Plaintiff was diagnosed with transient ischemic attack, causing left-sided weakness, resolved; history of prior stroke with no sequelae; and history of questionable myocardial infarction. He was prescribed Plavix[5]. (Tr. 572).

Donald Ellis, D.C., of Discover Chiropractic Center, P.C., treated Plaintiff from June 2003 through October 2003. His treatment notes from June 1, 2003 reflect that Plaintiff was involved in a motor vehicle accident on that day. Throughout his treatment, Plaintiff reported pain and stiffness in his low back and neck. (Tr. 611-619). Dr. Ellis completed a Physical Capacities Evaluation on August 18, 2003. He opined that Plaintiff was able to sit/stand/walk four hours at a time and five hours total in an eight-hour workday, could frequently lift up to ten pounds, occasionally lift up to 25 pounds, and could use hands and feet for repetitive action without limitations. He further stated that Plaintiff could occasionally bend, squat, crawl, and reach, and could not climb at all. Dr. Ellis totally restricted Plaintiff from activities at unprotected heights and activities involving exposure to dust, fumes and gases. Dr. Ellis opined that Plaintiff is

_____

[5]Plavix is used to reduce the risk of stroke or heart attack in patients who have already had a heart attack or stroke, or have other circulatory problems due to narrowing and hardening of the arteries. See www.drugs.com. Last visited October 7, 2009.

moderately restricted from activities involving exposure to marked changes in temperature and humidity, and that he is mildly restricted from activities involving being around moving machinery, and involving driving automotive equipment. Dr. Ellis provided a diagnosis of moderate to advanced degenerative joint disorder, and opined that Plaintiff had been impaired with the disorder for four years. (Tr. 601).

During October 2003, Dr. Ellis noted that the injuries Plaintiff sustained in a traffic accident exacerbated his symptoms, and that he had responded well to treatment over the past three months. Dr. Ellis observed that a cervical spine x-ray showed advanced degenerative disc disease at C5/C6 and C6/C7, rotation malposition, and decreased lordosis, that the thoracic spine x-ray showed decreased kyphosis and rotation malposition at T4/T5, and that the lumbar spine x-ray showed degenerative joint disease at L5/S1, rotation malposition at L5/S1, and an acquired right short leg. (Tr. 605-606). Dr. Ellis diagnosed Plaintiff with neck strain/sprain, whiplash injury and thoracic and lumbar strain/sprain. (Tr. 608). In a "Disability Certificate" dated August 21, 2003, Dr. Ellis opined that Plaintiff was totally incapacitated from August 21, 2003 to October 21, 2003. (Tr. 610).

Plaintiff presented to Franklin Primary Health Center, Inc. (hereinafter "Franklin") on December 16, 2003. He complained of numbness on his left side and low back pain. He was diagnosed with

arteriosclerotic heart disease, and referred to Dr. Parker. (Tr. 630-630A).

William A. Crotwell, III., M.D., performed an orthopedic evaluation on May 18, 2004 at the request of the Agency. On physical examination of Plaintiff's upper extremities, Dr. Crotwell reported forward flexion of 80, extension 70, and lateral motion 50, with poor attempt. He further reported +2 reflexes in the biceps, triceps and brachioradialis, decreased sensory over both arms, 5/5 motor, and normal sweat patterns, grip strengths, and intrinsics and thenars. (Tr. 637). On physical examination of Plaintiff's lower extremities, Dr. Crotwell reported that Plaintiff bent to take off his socks, but then asked for help; normal heel/toe walk; forward flexion of 60; and extension 40 to 50. Plaintiff had +2 reflexes in the patella and Achilles; decreased sensory over the inner thigh and calf of both legs; 5/5 motor; and negative hip rotation. Dr. Crotwell noted increased pain with plantar flexion and decreased or no change with dorsiflexion, which he stated was "inconsistent." (Tr. 638).

Plaintiff's cervical spine x-rays showed disc space collapse at C4-5 and C5-6 with degenerative disc disease, some osteophyte formation, and spurring. X-rays of Plaintiff's lumbar spine showed minimal degenerative changes, some mild disc space collapse at L4-5, and possible sacralization of L5. Dr. Crotwell diagnosed Plaintiff with moderate cervical degenerative disc disease and mild lumbar

degenerative disc disease, opined that Plaintiff's degenerative disc disease could be treated conservatively, and that Plaintiff could perform light and sedentary work. (Tr. 638-639).

Dr. Crotwell completed a Physical Capacities Evaluation on May 20, 2004. He opined that Plaintiff could sit/stand/walk one hour at a time, could sit 8 hours total, stand six hours total and walk four hours total in an eight-hour workday. He further opined that Plaintiff could lift 10 pounds continuously, 25 pounds frequently, and 50 pounds occasionally, and that he could carry five pounds continuously, 20 pounds frequently, and 25 pounds occasionally. Dr. Crotwell also opined that Plaintiff can use his hands and feet for repetitive action, and can bend, squat, crawl and climb occasionally, and reach frequently. He assigned Plaintiff a total restriction from activities at unprotected heights, a moderate restriction from activities around moving machinery, and a mild restriction from activities involving driving automotive equipment. He again opined that Plaintiff could perform light manual labor and any sedentary work. (Tr. 640).

Plaintiff presented to Providence Hospital emergency room on November 30, 2004, complaining of chest pain. He underwent a heart catheterization, which showed no significant epicardial coronary disease. (Tr. 644-647, 649, 762-764). A CT of his chest showed no pulmonary embolic disease, no acute intrathoracic abnormality, and normal appearance of the thoracic aorta. (Tr. 648). Plaintiff's

EKG results were abnormal, showing lateral T Wave inversion consistent with possible ischemia. (Tr. 650). At discharge, Plaintiff's diagnosis was chest pain, hypertension and reflux, and he was directed to follow-up with Michael A. Rihner, M.D., of Citrin & Rihner Cardiology, P.C., in four weeks so he could be placed on a two gram sodium, low-fat, low-cholesterol diet. (Tr. 643, 761)[6].

Plaintiff was seen at Citrin & Rihner Cardiology, P.C. on December 28, 2004 with complaints of burning in his chest[7]. His physical exam was normal except for heart palpitations, and his diagnosis was chest pain and hypertension. (Tr. 722).

Plaintiff underwent a cardiovascular evaluation by Dr. Citrin on January 3, 2005 at the request of the Agency. (Tr. 661-662). On physical exam, Dr. Citrin noted no bruits and no jugular venous distension and clear lungs. His cardiovascular exam showed a regular rate and rhythm with III/VI systolic murmur; normal splitting second heart sounds; no gallops or rubs; and PMI[8] at the apex. Plaintiff's abdomen was non-tender; there were no pulsatile

_____

[6]The medical records reflect that during Plaintiff's hospital stay, he was treated by both Dr. Citrin and Dr. Rihner. (Tr. 643, 646).

[7]It is not clear from the medical record whether it was Dr. Citrin or Dr. Rihner who treated Plaintiff on December 28, 2000. (Tr. 722).

[8]Point of maximal impulse; the point on the chest wall where the maximum cardiac impulse is seen or palpated. See, www.medilexicon.com. (Last visited September 9, 2009).

masses; pulses were 2+ bilaterally throughout; and there was no peripheral edema. Plaintiff's EKG showed sinus bradycardia and left ventribular hypertrophy with a strain pattern, his coronary arteries were normal, and his EKG showed left ventribular hypertrophy and mild aortic stenosis. Dr. Citrin opined that Plaintiff should be able to perform work at the "moderate" exertional level. (Tr. 661).

In a Medical Source Opinion form completed on the same day, Dr. Citrin opined that Plaintiff has no limit on his ability to stand and sit in an eight-hour workday, that Plaintiff can walk one to two hours at a time and that he can walk a total of four to six hours in an eight-hour workday. He also opined that Plaintiff can occasionally lift/carry 30 pounds, frequently lift/carry 25 pounds, and constantly lift/carry 20 pounds. He further opined that Plaintiff can frequently climb, balance, stoop, kneel, crouch, and crawl, and can constantly push/pull with his arms and legs, handle, finger, feel, talk, hear, and reach overhead. Dr. Citrin opined that Plaintiff can occasionally work in high, exposed places and around automotive equipment, and that he can frequently work in extreme cold or heat and in wetness and humidity, around fumes, noxious odors, dust, mists, gases or poor ventilation, and in proximity to moving mechanical parts, and to constant exposure to vibration. (Tr. 663-665).

Plaintiff was admitted to Mobile Infirmary on April 4, 2005[9]. On admission, Plaintiff was diagnosed with chest pain, hypertension and anxiety. (Tr. 679). Kenneth E. Francez, M.D., performed a consultative evaluation on this day, and noted chest pain, mild aortic insufficiency, mild to moderate tricuspid regurgitation; hypertension; poly-substance use[10]; abnormal electrocardiogram T-wave inversion in the lateral leads; and normal left ventricular ejection fraction from November 2004 echocardiogram. (Tr. 671-675). Plaintiff was scheduled to be evaluated by Cardiology Associates but left the hospital against medical advice, with his monitors and IV intact. (Tr. 673).

Plaintiff underwent a physical examination by Travis Rutland, M.D., on March 4, 2006, at the request of the Agency. Plaintiff described his activities of daily living as including cooking, cleaning his home, blowing leaves from his yard with a leaf blower, raking on good days, and walking a mile every two to three days for exercise. Plaintiff's physical examination was normal, except Dr.

---

[9]Plaintiff was also treated at Providence Hospital emergency room on September 2, 2005, and November 22, 2005. The medical records reflect an abnormal EKG, and a chest x-ray which showed no acute disease. (Tr. 699-702, 705, 712-713, 779). Additionally, Plaintiff was treated at Springhill Memorial Hospital emergency room on June 14, 2006. His physical exam was normal, including extremities with full range of motion, equal tone and strength, and no cyanosis, edema, joint tenderness or effusion. A chest x-ray was unremarkable, and an EKG showed sinus bradycardia without any acute ST changes. (Tr. 783-789).

[10]Plaintiff's urine screen was positive for cocaine, although Plaintiff denied cocaine use.

Rutland noted that Plaintiff ambulated slowly without the assistance of his cane, and that he stumbled on his toes and heels.  (Tr. 730-732).  Dr. Rutland diagnosed Plaintiff with chronic cervical neck pain, likely secondary to degenerative disc disease; chronic lumbago, likely secondary to degenerative disc disease; hypertension; hypothyroidism; and history of coronary artery disease.  (Tr. 733).

An Agency physician completed a Physical Residual Functional Capacity Assessment on March 21, 2006.  In the assessment, Plaintiff is limited to lifting/carrying up to 10 pounds frequently and up to 20 pounds occasionally, and standing/walking/sitting about six hours in an eight-hour workday.  In addition, the Agency physician opined Plaintiff is unlimited in his ability to push/pull hand or feet controls, that Plaintiff is restricted from any balancing, and that Plaintiff is limited to occasional climbing, stooping, kneeling, crouching, and crawling.  Plaintiff was not assigned any manipulative or visual limitations, although he was restricted from any activities around hazards, from moderate exposure to fumes, odors, dusts, gases and poor ventilation, and from concentrated exposure to extreme cold, heat or vibration.  (Tr. 749-756).

Plaintiff was seen by Shazib N. Khawaja, M.D., FACC, FSCAI at the University of South Alabama on June 20, 2006.  His physical exam was normal except for 2/6 holosystolic murmur and extremities with 1+ edema bilaterally and 2+ pulses in temporal plane and distal

pulse.  Dr. Khawaja reported that Plaintiff's EKG was essentially normal with no evidence of previous Q wave myocardial infarction, and that he had no cardiac symptoms.  (Tr. 791-796).

1.  **Whether the ALJ erred in failing to adopt the prior ALJ's finding that Plaintiff required a sit/stand option?**

Plaintiff points to the first ALJ's decision, which was issued in September 17, 2002 and found that Plaintiff's RFC included a sit/stand option, and asserts that the first ALJ's finding with respect to Plaintiff's RFC is "binding on the Defendant" as to the current applications. (Doc. 10 at 4).  Defendant responds that the ALJ was not required to adopt determinations made in the previous opinions, and contends that 20 C.F.R. § 404.946(a) provides that the issues before an ALJ are all those brought out in the initial, reconsidered or revised determination that were not decided in favor of Plaintiff. (Doc. 11 at 18-19).

In the administrative decision dated September 17, 2002, ALJ DeBellis found that "The claimant has a residual functional capacity for work at the 'light' exertional level, with a sit/stand option." (Tr. 272).  In the instant ALJ's decision, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity perform work at the light exertional level, in function-by-function physical terms, as set forth in SSRs 83-10 and 96-8p, with the presence of certain environmental limitations. That is, the claimant has been able to sit for a total of 8 hours, stand for a total of 6 hours and walk for a total of 4 hours during

16

an 8-hour workday; has been able to lift and carry 21-30
pounds; and has been able to frequently reach;
occasionally bend, squat, crawl and climb; and use his
extremities for repetitive action such as simple
grasping, fine manipulation and pushing/pulling of
controls.  To accommodate his asbestosis, the claimant
must avoid more than occasional exposure to dust, fumes,
gases and temperature extremes.

. . . Therefore, the medical evidence and the claimant's
testimony do not support the need for a sit/stand option.
......

(Tr. 31, 34).

Recently, in McKinzie v. Commissioner of Social Security, 2010
U.S. App. LEXIS 1461 (11th Cir. Jan. 21, 2010) (per curiam), a
panel of the Eleventh Circuit addressed the issue of whether
administrative res judicata precluded an ALJ from rejecting a prior
ALJ's finding that the claimant could not use her arms or hands
repetitively.  The Court observed that "Administrative res judicata
applies when the agency has made a previous determination or
decision . . . about [a claimant's] rights on the same facts and on
the same issue or issues, and this previous determination or
decision [had] become final by either administrative or judicial
action." 20 C.F.R. § 404.957(c)(1); see Cash v. Barnhart, 327 F. 3d
1252, 1255 (11th Cir. 2003)".  McKinzie at *2-*3.  The Court also
noted that it considered persuasive the Seventh Circuit's decision
in Reynolds v. Brown, 844 F.2d 451 (7th Cir. 1988), which found that
"an ALJ should not consider prior applications when the instant
application involves a different period of time than that alleged
in prior applications. Id. at 453-454(stating that the evidence in

prior applications was "completely irrelevant to the instant application, which alleged an onset date beginning after the prior applications were denied.)" Id. at *3. In McKinzie, the Court concluded that because the claimant's current application concerned an unadjudicated time period, the ALJ did not err in declining to give preclusive effect to a prior finding that the claimant could not use her arms or hands repetitively. *See also* Luckey v. Astrue, 331 Fed. Appx. 634; 2009 U.S. App. LEXIS 10644 (11th Cir. 2009)(Court held that the doctrine of administrative res judicata was not applicable because the factual time period for the claimant's current application was different from her previous application; thus, administrative res judicata did not apply).

In the case at hand, the ALJ's determination in the September 17, 2002 decision, that Plaintiff's RFC includes a sit/stand option, was not binding on the ALJ who issued the decision at issue. The determination made in the first decision was for the time period from October 9, 2000 through the date of that decision, September 17, 2002, and was based on the evidence of record in that case for that time period. (Tr. 272-273). In her current applications, Plaintiff alleged an onset date of September 18, 2002; thus, the ALJ's review focused on evidence from September 2002 through the date of the May 2007 decision because that was the time period in question. Because the ALJ's findings in the first decision did not relate to the unadjudicated time period addressed

in the May 2007 decision, the prior findings were not binding on the ALJ who rendered the May 2007 decision.

Moreover, once the Appeals Council remanded the ALJ's October 24, 2004 decision, the ALJ was not bound by the findings contained in that decision. *See* <u>Gibbs v. Barnhart</u>, 130 Fed. Appx. 426, 430, 2005 WL 1052858 (llth Cir. 2005)("Because the Appeals Council vacated the first ALJ's written decision with instructions for the ALJ to obtain and consider additional evidence, the specific findings contained in that first decision were never conclusively established and were subject to modification."); <u>Houston v. Sullivan</u>, 895 F. 2d 1012 (5th Cir. 1989)(ALJ not bound to earlier decision, on remand); <u>Gregg v. Commissioner of Social Security</u>, 2007 U.S. Dist. LEXIS 92424 (M.D. Fla. Dec. 17, 2007)("Absent a final decision, the doctrine of collateral estoppel does not bar the ALJ's reconsideration of the entire matter, on a more developed record, following remand from the Appeals Council.")

**2.  Whether the ALJ improperly formed his own opinion about Plaintiff's need for a sit/stand option, and erred in finding that Plaintiff can perform his past relevant work as an "Instructor, Physical Education" under Dictionary of Occupational Titles (DOT) # 099.224-010.**

The essence of Plaintiff's second argument is that the ALJ improperly formed his own opinion about whether Plaintiff requires a sit/stand option and erred in finding that Plaintiff can return to his past relevant work as a physical education instructor notwithstanding his need for a sit/stand option. The Commissioner

argues that upon remand, the ALJ was not required to again adopt Dr. Crotwell's finding that Plaintiff is limited to sitting, standing and walking one hour at a time, that it was the ALJ's duty to resolve conflicts in the evidence, and that the ALJ's decision is supported by substantial evidence.

Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless "good cause" is shown. *See* § 404.1527(d)(1), (2), (5); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists to discredit a physician's testimony when it is contrary to or unsupported by the evidence of record, or it is inconsistent with the physician's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th. Cir. 2004). Accordingly, the ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).

As noted supra, in the May 25, 2007 administrative decision, the ALJ found that Plaintiff's RFC is as follows:

> the claimant has been able to sit for a total
> of 8 hours, stand for a total of 6 hours and
> walk for a total of 4 hours during an 8-hour
> workday; has been able to lift and carry 21-30

pounds; and has been able to frequently reach;
occasionally bend, squat, crawl and climb;
and use his extremities for repetitive action
such as simple grasping, fine manipulation and
pushing/pulling of controls. To accommodate his
asbestosis, the claimant must avoid more than
occasional exposure to dust, fumes, gases and
temperature extremes.

(Tr. 31). The ALJ also held that:

The undersigned has assigned significant and greater
weight to the opinions offered by Drs. Crotwell and
Citrin as well as the opinion offered by the State
Agency medical consultant. These opinions are
mutually corroborating in concluding that the
claimant is capable of engaging in a wide range of
light work activity with the environmental
limitations indicated, as above. Before proceeding
further, the undersigned is cognizant of the Appeals
Council's conclusion that Dr. Crotwell's assessment
required a sit/stand option based on a limitation for
sitting, standing and walking for not more than 1
hour at a time. After a careful review of Dr.
Crotwell's assessment, it is noted that he did not
limit the claimant to alternative periods of
sitting and standing. Rather, he commented that the
claimant was able to engage in light manual labor.

................................................

Moreover, the claimant testified at the April 2007
hearing that he was able to stand for at least 2 hours
before sitting. The undersigned also notes
that Dr. Citrin, a treating cardiologist, reported
that the claimant was able to walk for 4-6 hours
during an 8-hour workday with no limit on standing or
sitting. . . . Therefore, the medical evidence
and the claimant's testimony do not support the need
for a sit/stand option.......

(Tr. 33-34).

The undersigned finds that while the ALJ assigned substantial

weight to the opinions of both Dr. Crotwell and Dr. Citrin, and

while he did not expressly reject Dr. Crotwell's assessment that Plaintiff is limited to sitting, standing and walking for not more than one hour at a time, he did so implicitly as he did not include this limitation in Plaintiff's RFC, although he made specific reference to it in his decision. The ALJ also provided specific reasons why the one hour sit/stand/walk limitation was not necessary. First, the ALJ noted that Dr. Crotwell's assessment did not expressly limit Plaintiff to alternative periods of sitting and standing. If this were the only reason offered by the ALJ for not adopting the one hour sit/stand/walk limitation, it would not suffice. However, the ALJ also noted that Plaintiff's treating cardiologist, Dr. Citrin, opined that Plaintiff is able to walk for four to six hours during an eight hour workday, with no limit on either standing and sitting, and that Plaintiff testified at the April 2007 administrative hearing that he is able to stand at least two hours before sitting. The undersigned finds that both constitute good reasons for rejecting the one hour sit/stand/walk limitation imposed by Dr. Crotwell, and they are supported by substantial evidence. Additional support for the RFC assigned Plaintiff is Plaintiff's own report of his daily activities, specifically his report to Dr. Citrin on September 27, 2005, that he was raking debris after Hurricane Katrina, and his report to Dr. Rutland on March 4, 2006 that he cooked, cleaned his home, used a leaf blower to blow leaves from his yard, and walked a mile every

two to three days for exercise. In addition, based upon his review

of the medical evidence, the Agency physician did not find that

Plaintiff needed to periodically alternate between sitting and

standing (Tr. 750), nor did Plaintiff's chiropractor. (Tr. 601).

Accordingly, substantial evidence supports the ALJ's finding with

respect to Plaintiff's RFC.

Plaintiff's final argument is that the ALJ misquoted prior VE

testimony by stating that a prior VE opined that a claimant with a

RFC for light work with a sit/stand option could perform past work

as a physical education instructor. To the extent the ALJ did in

fact misstate VE testimony from a prior administrative hearing,

such error was harmless. In concluding that Plaintiff could return

to his past work as a physical education instructor, the ALJ relied

not on VE testimony, but on the DOT. (Tr. 34-35). According to the

DOT[11], the job of physical education instructor is not precluded by

---

[11]The DOT describes a physical education instructor as
requiring the ability to perform light work as follows:

> Light Work - Exerting up to 20 pounds of force
> occasionally, and/or up to 10 pounds of force
> frequently, and/or a negligible amount of force
> constantly (Constantly: activity or condition exists
> 2/3 or more of the time) to move objects. Physical
> demand requirements are in excess of those for
> Sedentary Work. Even though the weight lifted may be
> only a negligible amount, a job should be rated Light
> Work: (1) when it requires walking or standing to a
> significant degree; or (2) when it requires sitting
> most of the time but entails pushing and/or pulling of
> arm or leg controls; and/or (3) when the job requires
> working at a production rate pace entailing the
> constant pushing and/or pulling of materials even

the RFC assigned Plaintiff by the ALJ.  Thus, any misstatement by the ALJ with respect to prior VE testimony was harmless.

**V.    Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record, oral arguments and memoranda of the parties,  it is **RECOMMENDED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits, disabled widowers benefits and supplemental security income, is due to be **AFFIRMED.**

The attached sheet contains important information regarding objections to this Report and Recommendation.

**DONE** this **29th** day of **January, 2009.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

---

though the weight of those materials is negligible.
NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.   **<u>Objection</u>**.   Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.   Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. <u>See</u> 28 U.S.C. § 636(b)(1)©; <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[12] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **<u>Opposing party's response to the objection.</u>**   Any opposing party may submit a brief opposing the objection within fourteen (14) days of being served with a copy of the statement of

---

[12]The Court's Local rules are being amended to reflect the new computations of time as set out in the amendments to the Federal Rules of Practice and Procedure, effective December 1, 2009.

objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.    **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate
judge finds that the tapes and original records in this action are
adequate for purposes of review.  Any party planning to object to
this recommendation, but unable to pay the fee for a transcript, is
advised that a judicial determination that transcription is
necessary is required before the United States will pay the cost of
the transcript.

                          **/s/ SONJA F. BIVINS**
                   **UNITED STATES MAGISTRATE JUDGE**